**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 12-2048

NAOMI REED,

Plaintiff, Appellant,

v.

ZIPCAR, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Thompson, Circuit Judge,
Souter,[*] Associate Justice,
and Stahl, Circuit Judge.

Frank John Jablonski, with whom Progressive Law Group, LLC, Eugene R. Richard and Wayne, Richard & Hurwitz, LLP were on brief, for appellant.
Matthew Rawlinson, with whom Michael E. Bern, Christopher J. Cunio, Patrick E. Gibbs, Nicholas D. Stellakis, Cooley Manion Jones LLP, and Latham & Watkins LLP, were on brief, for appellee.

July 17, 2013

---

[*] Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**SOUTER, Associate Justice**.  Naomi Reed appeals the district court's dismissal of her complaint against Zipcar, Inc., claiming that certain fees charged by the corporation are unlawful. We affirm.

I

Zipcar, Inc. operates a car-sharing service in major cities.  Its customers become "members" by paying an annual fee and signing a membership agreement, after which they may reserve cars by the hour for a fee proportional to the period agreed upon.  A critical term of the reservation contract obligates the customer to return the rented car to its origin by the end of the specified period to ensure that the next customer with a reservation is not delayed.  As a condition of membership, Zipcar customers agree to pay a $50 hourly late fee if they return a car late.

Reed is a Zipcar member, who has twice paid a $50 fee for returning a car within one hour after the reservation time expired. She filed a putative class action on diversity grounds in the district court contending that Zipcar's late fees violate governing Massachusetts law because they are "unfair and disproportionate relative to the costs of late returns, and further, do not reflect reasonable forecasts of damages due to late returns."  J.A. 19. She alleged that Zipcar's fees exceed those of four comparable firms, which charged late fees of $25 or less.  Based on these purported benchmarks, Reed argued Zipcar's fee was unlawful,

subject to claims for unjust enrichment, and for money had and received, and was a violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A; she sought restitution and a declaration that Zipcar had acted unlawfully.

After argument, the district court granted Zipcar's motion to dismiss the complaint for failure to state a claim. First, the court concluded that Reed had failed to state an "unlawful penalty" claim under Massachusetts law, because a party may argue that a liquidated damages provision provides for an unlawful penalty only as a defense to enforcement; it refused "to endorse a claim for relief heretofore unrecognized by Massachusetts courts, especially in light of the present consensus against its recognition as an independent cause of action." J.A. 206. The court noted in any event that such a claim would have been precluded by the voluntary payment doctrine. Second, the court dismissed Reed's equitable claims because under Massachusetts law they would arise only when there is no express contract between the parties governing the subject; they were also barred because of the existence of an adequate remedy at law.

Finally, the district court rejected Reed's Chapter 93A count because she had failed to plead sufficient facts to make out a plausible claim for relief. Her statutory complaint comprised two theories: that Zipcar's late fees were grossly disproportionate to the damages caused by tardy returns and that the late fees were

procedurally unconscionable. On the former, the district court found that "[e]stimating the damages resulting from late returns . . . cannot be done with precision, much less easily," J.A. 212, and that Reed had failed to offer any reasonable approximation of the harm that Zipcar could expect from breach. The fact that other companies charged lower fees did not support a plausible inference that Zipcar's fees were grossly disproportionate, owing to the variety of reasons that could support a variance in fees, and in any event, "it would be a stretch to characterize Zipcar's only slightly higher late fees as 'grossly disproportionate.'" J.A. 212. On the latter Chapter 93A theory, the court found that Reed had failed to allege that Zipcar's late fee was concealed or that she was misled.

Reed timely appealed, and this court has jurisdiction under 28 U.S.C. § 1291.

II

We review a dismissal under Rule 12(b)(6) de novo, Freeman v. Town of Hudson, 714 F.3d 29, 35 (1st Cir. 2013), accepting here "all factual allegations in [Reed's] complaint as true" and asking whether she has set forth allegations sufficient to warrant relief as a matter of law, Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). The "combined allegations . . . must state a plausible, not a merely conceivable, case for relief." Sepulveda-Villarini v. Dep't. of Educ. of P.R.,

-4-

628 F.3d 25, 29 (1st Cir. 2010) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)).  A claim is plausible if its factual allegations taken as true "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  While "[t]he plausibility standard is not akin to a 'probability requirement,'" it demands "more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  Unless the allegations push a claim "across the line from conceivable to plausible," dismissal is proper. Twombly, 550 U.S. at 570.

A

Reed says that the district court errantly rejected her two theories of relief under Chapter 93A.  Massachusetts General Laws Chapter 93A makes unlawful any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  We have previously observed that "[t]he statute does not define 'unfair' and 'deceptive,'" but the Supreme Judicial Court (SJC) has held "[a] practice [to be] unfair if it is within the penumbra of some common-law, statutory, or other established concept of unfairness; is immoral, unethical, oppressive, or unscrupulous; and causes substantial injury to other businessmen." Kenda Corp. v. Pot O'Gold Money Leagues, Inc., 329 F.3d 216, 234 (1st Cir. 2003) (quoting Linkage Corp. v. Trustees of Boston Univ., 679 N.E.2d 191, 209 (Mass. 1997)) (second alteration

-5-

in original) (internal quotation marks omitted). "Chapter 93A liability is decided case-by-case, and Massachusetts courts have consistently emphasized the 'fact-specific nature of the inquiry.'" Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 55 (1st Cir. 1998) (quoting Linkage Corp., 679 N.E.2d at 209). "Massachusetts leaves the determination of what constitutes an unfair trade practice to the finder of fact, subject to the court's performance of a legal gate-keeping function." Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 69 (1st Cir. 2009) (citing Milliken & Co. v. Duro Textiles, LLC, 887 N.E.2d 244, 259 (Mass. 2008)).

Reed insists that she stated a plausible Chapter 93A claim by alleging facts sufficient to show that Zipcar's late fee is an unlawful penalty. She argues that she showed that the fee does not approximate damages anticipated at the time of contract formation, and that she demonstrated that Zipcar's late fees are about twice as high, or more, as those of other companies in the industry. We assume without deciding that a litigant could bring a Chapter 93A claim by carrying the burden Reed says she has

satisfied.[1]  But even assuming the adequacy of such a claim, Reed's complaint falls short of sufficient facts to state one plausibly.

First, Reed did not plausibly allege that damages were easy to ascertain at the time of contract formation; her complaint is essentially silent on the issue.  Although it contains a variety of conclusory statements about Zipcar's capacity to monitor its fleet, the fact that it clusters cars close together, and that Zipcar has in place "protocols" "to systematically impose" the late fees, none of these supports a fair inference that the parties could have anticipated with ease the magnitude of likely damages from breach.  See Appellant's Br. 35 n.14.  As a point of comparison, the SJC has found damages "difficult to ascertain" at the time of formation in a case where the value of the item at issue "would vary depending on the demand . . . at the time of breach."  Minihane, 886 N.E.2d at 674.  Here, Reed has failed to allege that the cost of breach would not be similarly variable,

_____

[1]Her proffered showing may well fall within the "penumbra" of the standard under Massachusetts law for raising an affirmative defense to enforcement of a liquidated damages provision. Massachusetts courts will reject such a defense and enforce the provision so long as two criteria are met: first, "damages flowing from a breach [must have been] difficult to ascertain" at the time of contracting; and second, "the sum agreed on as liquidated damages [must] represent[] a 'reasonable forecast of damages expected to occur in the event of a breach.'"  NPS, LLC v. Minihane, 886 N.E.2d 670, 673 (Mass. 2008) (quoting Cummings Props., LLC v. Nat'l Commc'ns Corp., 869 N.E.2d 617, 620 (Mass. 2007).  Reed disavows that she raised this claim outside of Chapter 93A.  See Appellant's Br. 18 ("Reed did not assert a stand-alone unlawful penalty claim.").

rendering damages "extremely difficult, if not impossible" to anticipate at the time of formation.  Id.

Indeed, her complaint works against her, being replete with self-defeating allegations that could support the inference that damages would have been difficult to predict at the time of formation.  She acknowledges that the cost to Zipcar of a late return will fluctuate depending on when the car is ultimately returned, whether another customer with an immediately subsequent reservation is waiting, and whether alternative accommodations for the unlucky customer would have been ready to hand.  The district court was entirely justified in concluding that the pleadings indicate that "[e]stimating damages resulting from late returns . . . cannot be done with precision, much less easily."  J.A. 212.

Second, Reed failed to allege facts that could support an inference that the late fee was on the upside of a reasonable forecast of Zipcar's damages in the event of breach, under the standard that liquidated damages will pass muster where the "sum is not grossly disproportionate to the expected damages arising from a breach of the . . . agreement, nor is it 'unconscionably excessive' so as to be defeated as a matter of public policy." Kelly v. Marx, 705 N.E.2d 1114, 1117 (Mass. 1999) (quoting A-Z Servicenter, Inc. v. Segall, 138 N.E.2d 266, 268 (Mass. 1956)). Simply put, Reed's complaint contains no allegations as to what a reasonable estimate of damages would be. This is sufficient to

defeat this claim because, as the district court explained, Reed cannot adequately plead "that the late fee is 'grossly disproportionate' to the expected harm caused by late returns without coming up with a reasonable approximation of that harm." J.A. 212.

What Reed has pleaded are a series of fees charged by competitors that are lower than the fee charged by Zipcar, but this alone is not enough, because Reed has failed to put forth sufficient facts to support an inference that the cited charges reasonably approximate the cost of breach. For one thing, we note that the question for the district court was whether Zipcar's fee was grossly disproportionate as properly estimated when the contract was made, but two of the four competitors cited by Reed did not exist in 2006 when Reed became a Zipcar member. The fees imposed by the remaining two are offered in a vacuum, devoid of facts that would support an inference that their fees exemplified a persuasive industry standard or reflected the actual costs faced by a firm like Zipcar. The need for some such factual allegation follows from the commonly understood fact that there are myriad reasons that firms (particularly, new market entrants) might offer rates lower than the dominant market participant, and Reed has alleged nothing to support a plausible inference that these fees reflected their true costs of breach.[2]

_____

[2]Reed contests the district court's use of the voluntary payment doctrine as an alternative basis for its decision. We need

-9-

Reed also excepts to the dismissal of her equitable claims for unjust enrichment and for money had and received. She says that the district court erroneously established a "bright line" rule that precludes equitable claims arising from contract, Appellant's Br. 44, and that, contrary to the district court's finding, she did not have an adequate remedy at law. These claims were properly dismissed for the reasons given by the district court. Under Massachusetts law, litigants may not "override an express contract by arguing unjust enrichment," Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 130 (1st Cir. 2006), and the claim of money had and received is simply a narrower form of an unjust enrichment, limited to wrongs arising from money changing hands, see Jelmoli Holding, Inc. v. Raymond James Fin. Servs., Inc., 470 F.3d 14, 17 n. 2 (1st Cir. 2006). Thus, neither equitable ground asserted by Reed can trump the plain terms of the contract willingly entered by both parties. Because Reed neither alleges that the contract is invalid generally or that its provisions are unclear, Reed cannot escape its terms by resort to equity.

C

Finally, Reed faults the district court for failing to address her request for a declaration that Zipcar's fees were

---

not pass on this additional ground for affirmance.

illegal.  But Reed's declaratory relief claim is premised upon the validity of her inadequately pleaded substantive claims, and she offers no other basis for issuing a declaration.  There was simply nothing alleged for the district court to declare unlawful.  <u>See</u>, e.g., <u>Lozano</u> v. <u>AT&T Wireless Servs., Inc.</u>, 504 F.3d 718, 729 (9th Cir. 2007) (rejecting a declaratory judgment claim as merely "parasitic" of other claims rejected).

III

The judgment of the district court is affirmed.

*It is so ordered.*